IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LINDA MCKEITHAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14CV688 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Linda McKeithan ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff filed her application for Disability Insurance Benefits on April 25, 2012, alleging an onset date of October 7, 2011. (Tr. at 140-46.)[1] Her application was denied initially (Tr. at 54-66, 78-81) and upon reconsideration (Tr. at 67-77, 87-94). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 95-96.) Plaintiff, along with her attorney and an impartial vocational expert, appeared at the subsequent hearing on November 8, 2013. (Tr. at 24-53). The ALJ

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

ultimately issued a decision finding Plaintiff not disabled within the meaning of the Act (Tr. at 11-18), and, on June 13, 2014, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of

2

the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from two severe impairments: anemia and hypothyroidism, status post thyroidectomy. (Tr. at 13.) The ALJ found at step three that neither of these impairments met or equaled a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with the following additional limitations: "the claimant can frequently climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently balance. The claimant must avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights." (Tr. at 15.)

Based on this determination and the testimony of the impartial vocational expert, the ALJ determined at step four of the analysis that Plaintiff could perform her past relevant work as a kindergarten teacher, school librarian, elementary school teacher, and office manager. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

5

Plaintiff now raises three interrelated challenges to the ALJ's credibility determination. Specifically, she contends that the ALJ erred in evaluating (1) the credibility of Plaintiff's persistent fatigue allegations, (2) the principal cause of her fatigue, and (3) the impact of this symptom on her RFC. At the core of Plaintiff's contentions is her assertion that the ALJ "did not draw a connection between her uncontrolled hypothyroidism and her testimony regarding severe fatigue at the hearing." (Pl.'s Br. [Doc. #9] at 5.) Instead, Plaintiff argues, the ALJ erroneously "reasoned that Ms. McKeithan's fatigue resolved with the resolution of her anemia in 2011." (Id.) Plaintiff asserts that her extreme fatigue allegations due to hypothyroidism are supported in the longitudinal medical record by ongoing evidence of very high TSH levels. She further maintains that her substantial work history should bolster her credibility, and that the daily activities cited by the ALJ as evidence of her capabilities fail to establish that Plaintiff could perform the medium work set out in the RFC. (Pl.'s Br. at 6-7.)

In short, Plaintiff challenges the ALJ's finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her fatigue were not fully credible. The issue, therefore, is whether the ALJ failed to properly assess her fatigue allegations under the framework set out in Craig, 76 F.3d at 594-95. Craig provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 416.929(b)). In

6

the present case, the ALJ determined that Plaintiff's anemia and hypothyroidism "could reasonably be expected to cause [her] alleged symptoms," including fatigue. (Tr. at 16.)

Plaintiff's case therefore hinges on the second part of the test, which requires that the ALJ consider all available evidence, including Plaintiff's statements about her symptoms, in order to determine whether Plaintiff is disabled. Craig, 76 F.3d at 596. Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at this step, she need not credit them to the extent they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Thus, a plaintiff's symptoms "will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

>   (i) [Plaintiff's] daily activities;
>
>   (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
>   (iii) Precipitating and aggravating factors;
>
>   (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors, and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, the ALJ's decision specifically recounts as follows regarding Plaintiff's testimony:

> The claimant testified that she is unable to work due to thyroid issues that result in severe fatigue and depression. She described lack of energy, an inability to function, and difficulty making decisions. She can lift a gallon of milk or a bag of groceries, sit for unlimited periods, stand for ten minutes, and walk less than two blocks. If the claimant stands more than ten minutes, she becomes weak, and feels as if she will fall down. The claimant reported random dizziness when standing. She noted crying spells, and difficulty focusing.
>
> The claimant drives to the store or to church approximately twice per week. Church is 3-4 miles away. She does limited housework with breaks, shops for small items, and naps daily. Many days, she stated she does not leave the house. The claimant stated that she does not enjoy being around people. She tries to visit her father, who has Alzheimer's disease, and lives a few houses away.

(Tr. at 15-16; 36-48.)

The ALJ ultimately determined that "[t]he longitudinal medical evidence of record does not fully support the claimant's allegation of disability." (Tr. at 16.) In drawing this conclusion, he noted that Plaintiff experienced "improvement in symptoms of fatigue and

8

dyspnea" following iron dextran infusions for anemia. He also noted her testimony regarding daily activities and the lack of any medical opinions assessing limitations as great as Plaintiff alleged. Significantly, the ALJ further recounted that "March 2, 2012 treatment notes indicated that no change was needed in the claimant's medication for hypothyroidism because overall she was doing better," and "[p]rogress notes from Pinehurst Medical Clinic in October 2013 reported difficulty regulating the claimant's TSH level despite compliance, and complaints of fatigue and depression," but that Plaintiff's dizziness and weakness had lessened over time, and her strength and gait were normal. (Id.)

Plaintiff now asserts that the ALJ's decision "paid lip service to the fact that her thyroid stimulating hormone ("TSH") levels had been difficult to control, . . . [but] did not draw a connection between her uncontrolled hypothyroidism and her testimony regarding severe fatigue at the hearing." (Pl.'s Br. at 5.) However, the decision itself clearly included (1) Plaintiff's own allegation of such a connection (Tr. at 15) and (2) the objective medical evidence relating to Plaintiff's uncontrolled hypothyroidism, along with Plaintiff's simultaneous complaints of fatigue (Tr. at 16). Accordingly, the Court cannot conclude that the ALJ simply ignored the evidence of a connection between Plaintiff's thyroid condition and fatigue, as Plaintiff suggests. Rather, the ALJ acknowledged at step one of Craig that Plaintiff's hypothyroidism and anemia, along with her non-severe impairments, could be expected to cause fatigue. He then concluded at step two that, based on the evidence as a whole, Plaintiff's fatigue was not wholly disabling as she alleged.

Moreover, the true source, or sources, of Plaintiff's fatigue has remained uncertain throughout her treatment, despite her current emphasis on vacillating TSH levels. Plaintiff's

9

medical records are replete with fatigue allegations which, over the course of the period at issue, are attributed by Plaintiff's physicians to anemia, hypothyroidism, depression, sleep apnea, stress, and various combinations thereof. (Tr. at 519, 521-22, 566, 569, 673, 692, 695, 743, 749, 758, 765, 769.) In fact, the April 25, 2012 treatment notes of Dr. Charles Kuzma, which the ALJ discussed and assigned some weight, describe Plaintiff's frustration over the lack of answers regarding her fatigue:

> Ms. McKeithan and her companion today are quite frustrated over the inability of any doctor to describe why she is having these symptoms. I described that many factors can go into these subjective symptoms of fatigue and lightheadedness. Often there is not a medical reason to explain it. Given her psychiatric history, there may be a component of anxiety and depression contributing to these symptoms. The patient's primary care provider, Dr. Lingler, has assessed her thyroid function tests recently and the patient was found to be biochemically euthyroid. I tried to reassure Ms. McKeithan that today's hematologic findings were quite encouraging. However, the patient seemed somewhat disappointed in that she cannot contribute her feelings of malaise and fatigue to low blood count. The patient informs me that she is applying for Disability. I do not think her current hematologic status can support a claim from this perspective.

(Tr. at 521-22.) Similarly, on November 4, 2011, Steven Collins, P.A., noted that Plaintiff's appointment was a follow up for severe fatigue, but that "we are not sure if it is related to her anemia, hypothyroidism[,] or depression. There is probably a component of each [of] them." (Tr. at 569.)

Regardless of the source of Plaintiff's fatigue, no treatment records or opinion evidence supports the existence of such severe functional limitations as the inabilities to function or to stand for more than ten minutes at a time, as Plaintiff alleged in her testimony. Although Plaintiff now relies on high TSH values as the basis for an alleged error at step two of <u>Craig</u>, no medical evidence definitively links those numbers to any functional

10

limitations, let alone the totally disabling fatigue Plaintiff alleges. Accordingly, Plaintiff fails to demonstrate that the ALJ's findings were unsupported by substantial evidence.

Two final matters remain regarding Plaintiff's RFC. First, Plaintiff asserts that her substantial work history, spanning more than 40 years, entitles her to an enhanced credibility determination. That is, she argues that her work history should automatically entitle her subjective complaints to substantial credibility. (Pl.'s Br. at 7.) Neither the Fourth Circuit nor any court within it has recognized the so-called "enhanced credibility doctrine." In rejecting a claim similar to Plaintiff's, another district court within the Fourth Circuit reasoned as follows:

> [C]redibility determinations are ultimately for the ALJ to make based on the objective medical findings, the evidence of record, and Claimant's testimony and conduct at the administrative hearing. Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir.1984). The requirement that the ALJ make a credibility determination based on these factors would be meaningless if a long work history standing alone established "substantial credibility." . . . [Moreover,] the ALJ's decision did take into consideration Claimant's well-established work history. . . . Although Claimant's work history is commendable, it is not sufficient in and of itself to entitle Claimant to "substantial credibility" given the lack of evidence corroborating Claimant's testimony.

Jeffries v. Astrue, No. 3:10-cv-1405, 2012 WL 314156, at *25 (S.D.W. Va. Feb., 1, 2012). Accordingly, the ALJ in the present case did not err by failing to apply an "enhanced credibility" doctrine in this case. Rather, substantial evidence supports the ALJ's credibility determination, which was based on the record as a whole.

Second, Plaintiff argues that the daily activities cited by the ALJ fail to establish that Plaintiff could perform the medium work set out in the RFC. In doing so, Plaintiff misconstrues the ALJ's use of this factor within the rubric of the RFC determination. As set out in 20 C.F.R. § 404.1529(c)(3), a claimant's daily activities are one of the many factors an

11

ALJ not only can, but must, consider in making his credibility determination. Here, the ALJ explicitly considered Plaintiff's abilities to attend church, drive short distances, shop for small items, and do some household chores in the context of his credibility determination. That is, he included these activities among his reasons for disbelieving the extreme limitations described by Plaintiff, rather than as direct evidence that she could perform medium work. His ultimate conclusion regarding the RFC was based on the record as a whole, including the credibility determination, the weight given to the opinion of Dr. Kuzma (Tr. at 519-22), the weight given to the July 2012 Disability Determination Explanation (Tr. at 67-76), and the "evidence of 5/5 strength in the upper and lower extremities, a normal gait, and improvement in functioning with iron infusions." (Tr. at 17.) Thus, the determination is supported by substantial evidence in the record, and the Court finds no error.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #8] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #10] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 23rd day of July, 2015.

       /s/ Joi Elizabeth Peake
    United States Magistrate Judge